# UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

NIKE, INC.,

               Plaintiff,

v.

BY KIY LLC,
NICKWON ARVINGER,
DAVID WEEKS,
RELOADED MERCH LLC,
BILL OMAR CARRASQUILLO, and
XIAMEN WANDERING PLANET IMPORT AND
EXPORT CO., LTD.

               Defendants.

---

Case No. **1:22-cv-10176**

**COMPLAINT FOR:**

**(1) Trademark Infringement in Violation of 15 U.S.C. § 1114**

**(2) False Designation of Origin / Unfair Competition in Violation of 15 U.S.C. § 1125(a)**

**(3) Trademark Dilution in Violation of 15 U.S.C. § 1125(c)**

**(4) Common Law Trademark Infringement and Unfair Competition**

**(5) Trademark Infringement under New York General Business Law § 133**

**(6) Dilution under New York General Business Law § 360-L**

**JURY TRIAL REQUESTED**

---

Plaintiff Nike, Inc. ("Nike") for its Complaint against Defendants Nickwon Arvinger, David Weeks, By Kiy LLC (collectively, "Kiy"), Reloaded Merch LLC, Bill Omar Carrasquillo (collectively, "Omi"), and Xiamen Wandering Planet Import and Export Co., Ltd. ("Wandering Planet") (all defendants collectively referred to herein as "Defendants") alleges as follows:

## PRELIMINARY STATEMENT

1.    The Air Jordan 1 and Dunk are two of the most iconic and influential sneaker designs of all time. Released decades ago, the Air Jordan 1 and Dunk sneakers have transcended sports and fashion and are coveted by sneakerheads throughout the world.

2.      While the Air Jordan 1 and Dunk sneakers helped pave the way for modern sneakerhead culture through limited releases of various colorways and collaborations, their design is the common thread that has excited consumers for decades.  The iconic designs represent the originality, authenticity, and creativity that is entwined in the DNA of sneaker culture.  That is why Nike must protect its designs and intellectual property from bad actors who undermine the very DNA of authentic sneaker culture by promoting, copying, and selling Nike's designs as their own.

3.      Kiy and Omi are examples of those bad actors.  Kiy and Omi are currently promoting and selling Nike knockoffs in several colorways.  For reference, the table below shows Nike's genuine sneakers and examples of Kiy's and Omi's knockoffs side-by-side:

| Genuine Air Jordan 1 Highs | Kiy Knockoffs | Omi Knockoffs |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |





4.      Kiy's and Omi's conduct constitutes trademark infringement, false designation of origin, unfair competition, and trademark dilution.  And the damage to Nike from Kiy's and Omi's knockoffs is considerable.   Kiy's and Omi's knockoffs dilute Nike's famous Air Jordan 1 and Dunk trade dress and they confuse, and are likely to confuse, consumers as to the source, origin,

affiliation, and/or sponsorship of the products, especially in the post-sale environment.  In turn, Nike loses control over its brand, business reputation, and associated goodwill, which it has spent decades building.

5.       To be clear, Kiy's and Omi's lack of creativity and originality is intentional.  Since notifying Kiy of its infringement over a year ago, Nike has attempted to reach a resolution with Kiy that does not involve the continued theft of Nike's Air Jordan 1 design.  Yet, Kiy continues to profit off Nike's designs, reputation, and goodwill through its continued use of Nike's trade dress and sale of knockoff Air Jordan 1 sneakers.  Similarly, despite receiving notice from Nike of its infringement, Omi continues to profit from the theft of Nike's designs, reputation, and goodwill through its continued use of Nike's trade dress and sale of knockoff Air Jordan 1 and Dunk sneakers.

6.       Importantly, bad actors include not only those like Kiy and Omi who sell illegal knockoffs directly to consumers, but also various others in the supply chain, including manufacturers and distributors who provide material assistance to direct-to-consumer infringers. Many sellers of fake sneakers lack the resources and connections to manufacture, design, and source the products entirely by themselves.  Companies acting behind-the-scenes provide these services and play a critical and necessary role in such unlawful activity. Indeed, without the assistance provided by such actors, the unlawful sale of fake Nike sneakers would often not be possible.

7.       In order to adequately protect Nike's valuable intellectual property rights, its enforcement of such rights must extend up the supply chain—beyond direct-to-consumer sellers— to actors who are participants in and the moving forces behind the infringing activities of fake sneaker sellers.

8.     Wandering Planet is one such behind-the-scenes actor that provides material assistance to infringers such as Kiy and Omi through its manufacture and importation of knockoff Nike products.  Upon information and belief, Wandering Planet manufactures, distributes, sources, sells, and/or supplies knockoff Nike Air Jordan 1 and Dunk sneakers to Kiy, Omi, and possibly others who subsequently sell those products to consumers.

9.     Sneakers bearing Nike's trade dress that Wandering Planet manufactures, sources, or otherwise provides, such as the sneakers shown above, cause confusion in the marketplace regarding whether they are legitimate Nike products, through source or affiliation, or illegal fakes. By supplying Kiy and Omi with knockoff sneakers using Nike's registered Air Jordan 1 and Dunk trade dress, Wandering Planet knowingly participated in a scheme to intentionally create confusion in the marketplace and capitalize on it.

10.     Nike cannot allow bad actors like Defendants to confuse consumers by building a business on the back of Nike's most famous trademarks, undermining the value of those trademarks and the message they convey.  Nike therefore brings this lawsuit to stop bad actors like Defendants from making, sourcing, distributing, and selling knockoffs of Nike's products and illegally using Nike's most famous designs.

## THE PARTIES

1.     Nike is a corporation organized under the laws of the State of Oregon with a principal place of business at One Bowerman Drive, Beaverton, Oregon 97005.

2.     On information and belief, Nickwon Arvinger is an individual residing in New York and/or New Jersey.

3.     On information and belief, David Weeks is an individual residing in New York.

4.      On information and belief, Nickwon Arvinger and David Weeks are founding members and co-owners of By Kiy LLC.

5.      On information and belief, By Kiy LLC is a limited liability company organized under the laws of the State of New Jersey with a principal place of business at 7221 Kennedy Blvd., North Bergen, New Jersey 07047.

6.      On information and belief, Reloaded Merch LLC is a limited liability company organized under the laws of the State of Pennsylvania with the principal place of business at 1009 4th Avenue, Croydon, Pennsylvania 19021.

7.      On information and belief, Bill Omar Carrasquillo is an individual residing in New Jersey.

8.      On information and belief, Bill Omar Carrasquillo is a founder and owner of Reloaded Merch LLC.

9.      On information and belief, Xiamen Wandering Planet Import and Export Co., Ltd. is a foreign company based out of China.

## JURISDICTION AND VENUE

10.      Nike brings this suit against Defendants seeking damages and injunctive relief as a result of trademark infringement under the trademark laws of the United States, namely Title 15 of the United States Code, 15 U.S.C. §§ 1114, 1125; 15 U.S.C. § 1051, *et seq.* ("Lanham Act"); for trademark infringement and deceptive acts and practices under New York Law; and various other state and federal claims.

11.      This Court has subject matter jurisdiction at least under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because this action arises under federal trademark law.  This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

12.     This Court has supplemental jurisdiction over Nike's state law claims arising under the statutory and common law of the State of New York pursuant to 28 U.S.C. § 1338(b), because those claims are joined with substantial and related claims under federal law.  The Court also has subject matter jurisdiction over those claims pursuant to 28 U.S.C. § 1367 because Nike's state law claims are interrelated with Nike's federal claims and arise from a common nucleus of operative facts such that the adjudication of Nike's state law claims with Nike's federal claims furthers the interest of judicial economy.

13.     This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants are doing business in New York; have contracted to supply goods in New York; the claims at issue arise out of their transaction of business, including sourcing and/or supplying goods directed to consumers residing in New York and this district; have committed infringing acts outside of New York causing injury to Nike in New York; regularly do or solicit business in New York; derive substantial revenue from goods used in New York; and/or expect or reasonably should expect their infringing conduct to have consequences in New York and derive substantial revenue from interstate commerce.  These activities fall within the long-arm statute of the State of New York, CPLR §§ 301 and 302(a).

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants are transacting business in this District and have committed acts of infringement at issue in this Complaint in this District.

## FACTUAL BACKGROUND

### A.     <u>NIKE</u>

15.     Nike's principal business activity is the design, development, and worldwide marketing and selling of athletic footwear, apparel, equipment, accessories, and services.

16.     Nike is the largest seller of athletic footwear and apparel in the world.

17.     Nike sells its products directly to consumers through Nike-owned retail stores and digital platforms, and to retail accounts and a mix of independent distributors, licensees, and sales representatives in virtually all countries around the world.

18.     Having distinctive trademarks that are readily identifiable is an important factor in creating a market for Nike's products, in identifying Nike and its brands, and in distinguishing Nike's products from the products of others.

19.     As a result of continuous and long-standing promotion, substantial sales, and consumer recognition, Nike has developed powerful trademarks rights.

**B.      NIKE'S AIR JORDAN 1 TRADE DRESS**

20.     Nike's Creative Director, Peter C. Moore, designed the Nike Air Jordan 1 for Michael Jordan in 1984 during his rookie year in the NBA.

21.     The classic and unique design of the Air Jordan 1 was unlike any sneaker previously worn by NBA players.  The NBA warned Nike that the sneakers violated its uniform rules:



22.     Nevertheless, Michael Jordan's continued use of the Air Jordan 1 provided significant publicity for the sneakers.  A few weeks after receiving the NBA's warning, Air Jordan 1 advertisements appeared on televisions all over the country.

23.     Nike released the Air Jordan 1 to consumers in 1985.  Originally released in the black and red colorway, Nike released thirteen (13) additional colorways that same year.  The classic design was unique for its time and was extremely popular with consumers, selling out immediately.

24.     While the sneakers were originally marketed in the context of basketball, its unique design made the Air Jordan 1s sought after for other sports and contexts, including as a lifestyle symbol and a fashion icon.  Today, the Air Jordan 1 continues to be recognized as having one of the most famous and influential sneaker designs of all time.

25.     Nike has registered the Air Jordan 1 trade dress (High and Low), Air Jordan Logo, and sole pattern on the Principal Register of the U.S. Patent and Trademark Office.  Nike owns all right, title, and interest in the U.S. Trademark Registrations identified below.

| Reg. No. | Trademark | Reg. Date | Goods | Compl. Ex. |
|---|---|---|---|---|
| 3,725,535 |  | Dec. 15, 2009 | Footwear & Apparel | 1 |
| 6,368,694 |  | June 1, 2021 | Footwear | 2 |
| 6,368,691 |  | June 1, 2021 | Footwear | 3 |
| 3,721,064 |  | Dec. 8, 2009 | Footwear | 4 |

C.    NIKE'S DUNK TRADE DRESS

26.    The Nike Dunk sneaker began as a basketball sneaker in the 1980s.

27.    Nike introduced the Dunk sneaker in 1986 in connection with its College Colors Program.  College basketball players had typically worn single color shoes (e.g., white or black). Nike's College Colors Program offered schools the opportunity to have shoes that mirrored their school colors.  Nike's original "Be True to Your School" advertisement for its College Colors Program is reproduced below.



28.    Nike's College Colors Program became wildly popular.  At that time in the 1980s, college basketball was reaching new heights among a wide age range of athletes and fans.  From east to west, rivalries were strong and network TV brought college hoops, and Nike's Dunk sneakers, to the masses.

29.    The Dunk's adoption and popularity eventually spread beyond basketball culture as the skateboard community organically adopted the Dunk making it a skate icon by the 2000s. From there, the Dunk crossed over sports and fashion, and today it is recognized as one of the most iconic and influential sneakers of all time.

30.     Nike has registered the Dunk trade dress and sole pattern on the Principal Register of the U.S. Patent and Trademark Office. Nike owns all right, title, and interest in the U.S. Trademark Registration identified below (together with the Air Jordan 1 marks listed above in Paragraph 25, the "Asserted Marks").

| Reg. No. | Trademark | Reg. Date | Goods | Compl. Ex. |
|---|---|---|---|---|
| 3,711,305 |  | Nov. 17, 2009 | Footwear | 5 |
| 3,721,064 |  | Dec. 8, 2009 | Footwear | 4 |

**D.    NIKE MAINTAINS STRICT CONTROL OVER ITS TRADEMARKS AND NIKE'S RELATED BUSINESS REPUTATION AND GOODWILL**

31.     Nike maintains strict quality control standards for its products bearing the Asserted Marks.  Genuine Nike products bearing the Asserted Marks are inspected and approved by Nike prior to distribution and sale.

32.     Nike also maintains strict control over the use of the Asserted Marks in connection with its products so that Nike can maintain control over its related business reputation and goodwill.  Nike, for example, carefully determines how many products bearing the Asserted Marks are released, where the products are released, when the products are released, and how the products are released.

**E.    KIY'S UNLAWFUL ACTIVITIES**

33.     Kiy has wrongfully capitalized on the fame of Nike and its Asserted Marks by making, promoting, advertising, marketing, and selling in the United States footwear bearing the Asserted Marks and/or confusingly similar marks.

34.      Kiy's Infringing Products include at least all variations of sneakers Kiy refers to as "Air Kiy," and/or "Air Reves," and any other footwear that bears the Asserted Marks and/or confusingly similar marks.  Examples of Kiy's Infringing Products are shown below next to the Asserted Marks.



35.     As shown above, Kiy's Infringing Products are near-verbatim replicas of Nike's Asserted Marks.  Consumers agree, as evidenced below.



36.     There is already confusion in the marketplace.  Kiy's near-verbatim copying of the Asserted Marks has led to initial interest confusion, post-sale confusion, and confusion in the

secondary market.  For example, consumers selling Kiy's Infringing Products on the secondary

market refer to Kiy's Infringing Products as "Air Jordan 1s," "Jordan 1s" or "AJ1s."





37.     On information and belief, Kiy promotes and sells the Infringing Products on its

website at [https://bykiy.shop/], and on a variety of Instagram accounts under the handles

@kool.kiy, @kiystudios, and @kool_.kiy.  Kiy also promotes and sells the Infringing Products at

pop-up shops around the country, including in New York, New York; Los Angeles, California;

Chicago, Illinois; Atlanta, Georgia; Houston, Texas; Miami, Florida; and New Orleans, Louisiana,

to name a few.



38.     Kiy's Infringing Products are not genuine Nike products.  Nike did not manufacture or inspect the Infringing Products or any component of the Infringing Products, and it did not authorize Kiy to make, promote, advertise, market, or sell the Infringing Products.

39.     Kiy's Infringing Products travel in identical channels of trade and are sold to identical consumers as Nike's genuine products.

40.     Kiy has attempted to capitalize on Nike's valuable reputation and consumer goodwill by using the Asserted Marks and/or confusingly similar marks in a manner that is likely to cause consumers and potential consumers to believe that Kiy's Infringing Products are associated with and/or approved by Nike, when they are not.

41.     Unless stopped, Kiy's Infringing Products and Kiy's use of the Asserted Marks will continue to cause confusion in the marketplace, including but not limited to initial interest confusion, post-sale confusion, and confusion in the secondary markets.

42.     On information and belief, Kiy's actions alleged herein are intended to cause confusion, mistake, or deception as to the source of Kiy's Infringing Products and are intended to cause consumers and potential customers to believe that Kiy's business and products are associated with Nike, when they are not.

43.     Kiy's actions alleged herein are also likely to impair the distinctiveness of Nike's Asserted Marks through false association with Kiy, constituting dilution by blurring.

44.      By virtue of the acts complained of herein, Kiy has created a likelihood of injury to Nike's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Nike's products and Kiy's Infringing Products, and has otherwise competed unfairly by unlawfully trading on and using the Asserted Marks without Nike's permission.

45.     Kiy's actions alleged herein are also willful and deliberate.  Kiy was aware of the Asserted Marks and Nike's claims herein at least as of August 6, 2021, when Nike sent a cease-and-desist letter to Kiy.  *See* Exhibit 6.  Despite being on notice of Nike's Asserted Marks and claims herein, Kiy continues to promote, sell, and distribute the Accused Products in dozens of colorways.

46.     Kiy's acts complained of herein have caused damage to Nike in an amount to be determined at trial, and such damages will continue to increase unless Kiy is permanently enjoined from its wrongful acts.

47.     Kiy's acts complained of herein have caused Nike to suffer irreparable injury to its business. Nike will suffer substantial loss of goodwill and reputation unless and until Kiy is permanently enjoined from the wrongful acts complained of herein.

**F.    OMI'S UNLAWFUL ACTIVITIES**

48.    Omi has wrongfully capitalized on the fame of Nike and its Asserted Marks by making, promoting, advertising, marketing, and selling in the United States footwear bearing the Asserted Marks and/or confusingly similar marks.

49.    Omi's Infringing Products include at least all variations of sneakers Omi refers to as "Omi Zero 3.0," "Omi Zero 2.0," "Air Omi," "Omi 'Mon," "Elm Street," "Two Scoops," "Omi Halloween," and any other footwear that bears the Asserted Marks and/or confusingly similar marks.  Examples of Omi's Infringing Products are shown below next to the Asserted Marks.

| Asserted Marks | Omi's Infringing Products |
| --- | --- |
|  |  |
|  |  |
|  |  |

| Asserted Marks | Omi's Infringing Products |
|:---:|:---:|
|  | |

50.     As shown above, Omi's Infringing Products are near-verbatim replicas of Nike's

Asserted Marks.  Consumers agree, as evidenced below.





51.     There is already confusion in the marketplace.  Omi's near-verbatim copying of the Asserted Marks has led to initial interest confusion, post-sale confusion, and confusion in the secondary market.  For example, consumers commented on Omi's social media posts asking if the "these are jordans?", and consumers selling Omi's Infringing Products on the secondary market refer to Omi's Infringing Products as "Dunk[s]," "Air Jordan 1s," "Jordan 1s" "AJ1s."





52.     On information and belief, Omi promotes and sells the Infringing Products on Reloaded's website at [www.reloadeduniverse.com], and on a variety of Instagram accounts under the handles @omi_in_a_hellcat and @reloadedmerchandise.

53.     Omi's Infringing Products are not genuine Nike products.   Nike did not manufacture or inspect the Infringing Products or any component of the Infringing Products, and it did not authorize Omi to make, promote, advertise, market, or sell the Infringing Products.

54.     Omi's Infringing Products travel in identical channels of trade and are sold to identical consumers as Nike's genuine products.

55.     Omi has attempted to capitalize on Nike's valuable reputation and consumer goodwill by using the Asserted Marks and/or confusingly similar marks in a manner that is likely to cause consumers and potential consumers to believe that Omi's Infringing Products are associated with and/or approved by Nike, when they are not.

56.     Unless stopped, Omi's Infringing Products and Omi's use of the Asserted Marks will continue to cause confusion in the marketplace, including but not limited to initial interest confusion, post-sale confusion, and confusion in the secondary markets.

57.     On information and belief, Omi's actions alleged herein are intended to cause confusion, mistake, or deception as to the source of Omi's Infringing Products and are intended to cause consumers and potential customers to believe that Omi's business and products are associated with Nike, when they are not.

58.     Omi's actions alleged herein are also likely to impair the distinctiveness of Nike's Asserted Marks through false association with Omi, constituting dilution by blurring.

59.      By virtue of the acts complained of herein, Omi has created a likelihood of injury to Nike's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Nike's products and Omi's Infringing Products, and has otherwise competed unfairly by unlawfully trading on and using the Asserted Marks without Nike's permission.

60.     Omi's actions alleged herein are also willful and deliberate.  Omi was aware of the Asserted Marks and Nike's claims herein at least as of October 5, 2022, when Nike sent a cease-and-desist letter to Omi.  *See* Exhibit 7.  Despite being on notice of Nike's Asserted Marks and claims herein, Omi continues to promote, sell, and distribute the Accused Products in dozens of colorways.

61.     Omi's acts complained of herein have caused damage to Nike in an amount to be determined at trial, and such damages will continue to increase unless Omi is permanently enjoined from its wrongful acts.

62.     Omi's acts complained of herein have caused Nike to suffer irreparable injury to its business. Nike will suffer substantial loss of goodwill and reputation unless and until Omi is permanently enjoined from the wrongful acts complained of herein.

## G.     WANDERING PLANET'S UNLAWFUL ACTIVITIES

63.     On information and belief, Wandering Planet has attempted to capitalize on the strength and fame of Nike and its Asserted Marks by manufacturing and supplying footwear bearing the Asserted Marks and/or confusingly similar marks to direct-to-consumer sellers of knockoff Nike sneakers such as Kiy and Omi.

64.     As reported by Arch-usa.com, in 2021 Wandering Planet representative Ocean Yang contacted Arch-USA founder Chris Burns and explained that Wandering Planet manufactured "lightning bolt sneakers that look like the Jordan 1" for U.S. companies such as Kiy.[1]

65.     Wandering Planet has a business page on made-in-china.com, which lists Ocean Yang as the company representative.[2]  Wandering Planet's only product listing on this website is one of Kiy's Air Jordan 1 knockoffs.

---

[1]  *See* https://arch-usa.com/the-air-kiy-manufacturer-hit-my-dms-with-patent-and-trademark-information/ (last visited November 29, 2022); *see also* https://www.youtube.com/watch?v=d9ph5GYH-2Q&ab_channel=archbyccb (last visited November 29, 2022).

[2] *See* https://www.made-in-china.com/showroom/b961414dcec29e98 (last visited November 29, 2022).



66.     On information and belief, Wandering Planet manufactures Kiy's and Omi's Infringing Products.  Aside from branding on the sneakers, Kiy's and Omi's Infringing Products are virtually identical.[3]  Further, Omi admits in several interviews that he and Kiy share the same manufacturer, which purportedly caused a conflict between the two.[4]

67.     Wandering Planet's Infringing Products are not genuine Nike products.  Nike did not manufacture or inspect the Infringing Products or any component of the Infringing Products, and it did not authorize Wandering Planet to make, promote, distribute, or sell the Infringing Products.

68.     Wandering Planet's Infringing Products travel in the identical channels of trades and are sold to identical consumers as Nike's genuine products.

69.     Wandering Planet has taken systematic steps in an attempt to falsely associate its Infringing Products with Nike.  Wandering Planet has attempted to capitalize on Nike's valuable

---

[3] *See* https://www.youtube.com/watch?v=rh4eJohZzxI&ab_channel=TheLifeOfVareo (last visited November 29, 2022).

[4] *See, e.g.,* https://www.youtube.com/watch?v=mUD5YAzPlu0&ab_channel=SAYCHEESE%21 (last visited November 29, 2022);
https://www.youtube.com/watch?v=CEnbZcTFZVk&ab_channel=TheDevinwadeNetwork (last visited November 29, 2022).

reputation and customer goodwill by using the Asserted Marks and/or confusingly similar marks, and inducing others to do the same, in a manner that is likely to cause consumers and potential customers to believe that the Infringing Products are associated with Nike, when they are not.

70.     Wandering Planet has intentionally created confusion in the marketplace by, among other things, using Nike's Air Jordan 1 and Dunk trade dress, and inducing others to do the same.

71.     Unless stopped, Wandering Planet's Infringing Products, Wandering Planet's use of the Asserted Marks, and Wandering Planet's contribution and/or inducement of others to do the same will continue to cause confusion in the marketplace, including but not limited to initial interest confusion, post-sale confusion, and confusion in the secondary sneakers markets.

72.     Wandering Planet's actions alleged herein are intended to cause confusion, mistake, or deception as to the source of the Infringing Products.

73.     Wandering Planet's actions alleged herein are intended to cause consumers and potential customers to believe that Wandering Planet's and/or its customers' businesses and products are associated with Nike, when they are not.

74.     By virtue of the acts complained of herein, Wandering Planet has created a likelihood of injury to Nike's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Nike's products and Wandering Planet's or its customers' Infringing Products, and has otherwise competed unfairly by unlawfully trading on and using the Asserted Marks without Nike's permission.

75.     Wandering Planet's acts complained of herein are willful and deliberate.

76.     Wandering Planet's acts complained of herein have caused damage to Nike in an amount to be determined at trial, and such damages will continue to increase unless Wandering Planet is preliminarily and permanently enjoined from its wrongful acts.

77.     Wandering Planet's acts complained of herein have caused Nike to suffer irreparable injury to its business.  Nike will suffer substantial loss of goodwill and reputation unless and until Wandering Planet is preliminarily and permanently enjoined from the wrongful acts complained of herein.

## COUNT I:  TRADEMARK INFRINGEMENT
## IN VIOLATION OF 15 U.S.C. § 1114

78.     Nike repeats and alleges each and every allegation of paragraphs 1 through 77, above, as though fully set forth herein.

79.     Defendants have knowingly used and continue to use in commerce, without Nike's permission or authorization, the Asserted Marks and/or confusingly similar marks, in connection with products Defendants manufacture, advertise, promote, distribute, and/or sell in the United States, including the Infringing Products.  Defendants have used the Asserted Marks with the knowledge of, and the intent to call to mind and create a likelihood of confusion with regard to and/or trade off the Asserted Marks.

80.     Defendants' use of the Asserted Marks (a) constitutes infringement of the Asserted Marks; (b) is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendants or Defendants' Infringing Products with Nike or Nike's products; and (c) is likely to cause such people to believe in error that Defendants' Infringing Products have been authorized, sponsored, approved, endorsed, or licensed by Nike or that the Defendants are in some way affiliated with Nike.

81.     Nike has no control over the nature and quality of the Infringing Products offered by the Defendants, and Nike's reputation and goodwill will be damaged—and the value of the Asserted Marks jeopardized—by Defendants' continued use of the Asserted Marks and/or confusingly similar marks.  Because of the likelihood of confusion between Defendants' Infringing

Products and the Asserted Marks, any defects, objections, or faults found with Defendants' Infringing Products will negatively reflect upon and injure the reputation that Nike has established for the products it offers in connection with the Asserted Marks.  As such, Defendants are liable to Nike for infringement of its registered marks under 15 U.S.C. §1114.

82.     As a direct and proximate result of Defendants' wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate.  Unless enjoined, Defendants will continue to use the Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law.  Thus, Nike is entitled to an injunction restraining Defendants and, as applicable, their officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of infringement.

83.     Nike is further entitled to recover from Defendants the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of Defendants' wrongful acts.

84.     Defendants' use of the Asserted Marks and/or confusingly similar marks has been intentional and willful.  *See* Exhibits 6-7.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the Asserted Marks, and through Defendants' continued use of Nike's Asserted Marks after being on notice of Nike's claims.  Because of the willful nature of Defendants' wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

85.     Pursuant to 15 U.S.C. § 1117, Nike is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

## COUNT II:  FALSE DESIGNATION OF ORIGIN /
## UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C § 1125(A)

86.    Nike repeats and alleges each and every allegation of paragraphs 1 through 85, above, as though fully set forth herein.

87.    The Asserted Marks are federally registered and entitled to protection under federal and common law.  Nike has extensively and continuously promoted and used the Asserted Marks for many decades in the United States and worldwide.  Through that extensive and continuous use, the Asserted Marks have become famous and well-known indicators of the origin and quality of Nike products.

88.    Defendants' unauthorized use of the Asserted Marks and/or confusingly similar marks constitutes a false designation of origin that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendants and/or Defendants' Infringing Products by creating the false and misleading impression that Defendants' Infringing Products are manufactured by, authorized by, or otherwise associated with Nike.

89.    As a direct and proximate result of Defendants' wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate.  Unless enjoined, Defendants will continue to use the Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law.  Thus, Nike is entitled to an injunction precluding Defendants and, as applicable, their officers, members, agents, servants, and employees, and all persons acting in concert with them, from using the Asserted Marks and/or confusingly similar marks in connection with Defendants and the promotion, marketing, offer to sell, or sale of any of the Defendants' products.

90.    Nike is further entitled to recover from Defendants the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of Defendants' wrongful acts.

91.    Defendants' use of the Asserted Marks and/or confusingly similar marks has been intentional and willful.  *See* Exhibits 6-7.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the Asserted Marks, and through Defendants' continued use of Nike's Asserted Marks after being on notice of Nike's claims.  Because of the willful nature of Defendants' wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

92.    Pursuant to 15 U.S.C. § 1117, Nike is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

## COUNT III:  TRADEMARK DILUTION
## IN VIOLATION OF 15 U.S.C. § 1125(C)

93.    Nike repeats and alleges each and every allegation of paragraphs 1 through 92, above, as though fully set forth herein.

94.    The Asserted Marks have become famous throughout the United States as a result of the duration, extent, and geographical reach of advertising and publicity, the amount, volume, and geographical extent of Nike's sales and trading areas, their channels of trade, their degree of recognition, and registration of the marks.

95.    The Asserted Marks became famous before the Defendants used the marks.

96.    Because Nike's products bearing the Asserted Marks have gained a reputation synonymous with fashion, quality, style, and authenticity, the Asserted Marks have gained substantial renown.  Defendants have used and continue to use in commerce the Asserted Marks or confusingly similar marks in connection with Infringing Products.

97.     Defendants' use of the Asserted Marks and/or confusingly similar marks has caused, continues to cause, and/or is likely to cause irreparable injury to and dilution of the distinctive quality of the Asserted Marks in violation of Nike's rights under 15 U.S.C. § 1125(c). Defendants' wrongful use of the Asserted Marks is likely to cause dilution by blurring and the whittling away of the distinctiveness and fame of the Asserted Marks.

98.     As a direct and proximate result of Defendants' wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate.  Unless restrained, Defendants will continue to use the Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law.  Thus, Nike is entitled to an injunction restraining Defendants and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of dilution.

99.     Nike is further entitled to recover from Defendants the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of the Defendants' wrongful acts.

100.    Defendants' use of the Asserted Marks and/or confusingly similar marks has been intentional and willful.  *See* Exhibits 6-7.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the Asserted Marks, and through Defendants' continued use of Nike's Asserted Marks after being on notice of Nike's claims.  Because of the willful nature of Defendants' wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

101.    Pursuant to 15 U.S.C. § 1117, Nike is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

## COUNT IV:  COMMON LAW TRADEMARK INFRINGEMENT
## AND UNFAIR COMPETITION

102.    Nike repeats and alleges each and every allegation of paragraphs 1 through 101, above, as though fully set forth herein.

103.    Nike was the first to use the Asserted Marks.  As a result of Nike's continuous promotion and sales of products bearing Nike's Asserted Marks for many decades, Nike's Asserted Marks have become widely known, and Nike has been identified in the public mind as the manufacturer of the products that bear the Asserted Marks.

104.    As a result of the experience, care, and service of Nike in producing the products that bear the Asserted Marks, these products have gained a reputation synonymous with fashion, quality, style, and authenticity, the Asserted Marks have gained substantial renown.  Moreover, the Asserted Marks have come to symbolize Nike's respective reputations for quality and excellence.

105.    Defendants, with knowledge and intentional disregard of Nike's rights, continue to advertise, promote, and sell products using Nike's Asserted Marks and/or confusingly similar marks.  Defendants' acts have caused, continue to cause, and/or are likely to cause confusion as to the source and/or sponsorship of its products and Nike's products.

106.    Defendants' acts alleged herein and specifically, without limitation, Defendants' use, manufacture, promotion, distribution, offers to sell, and/or selling in the United States products that are confusingly similar to products bearing the Asserted Marks, infringe Nike's exclusive trademark rights in violation of the common law.

107.    As a direct and proximate result of Defendants' wrongful acts alleged above, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate.  Unless restrained, Defendants will

30

continue to use the Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law.  Thus, Nike is entitled to an injunction restraining Defendants and, as applicable, Defendants' other officers, members, agents, servants, and employees, and all persons acting in concert with them, from using the Asserted Marks and/or any confusingly similar marks in connection with Defendants and the promotion, marketing, offer to sell, or sale of any of the Defendants' products.

108.    Defendants' use of the Asserted Marks and/or confusingly similar marks has been intentional and willful.  *See* Exhibits 6-7.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the Asserted Marks, and through Defendants' continued use of Nike's Asserted Marks after being on notice of Nike's claims..

## COUNT V:  TRADEMARK INFRINGEMENT UNDER
## NEW YORK GENERAL BUSINESS LAW § 133

109.    Nike repeats and alleges each and every allegation of paragraphs 1 through 108, above, as though fully set forth herein.

110.    Defendants have knowingly used and continue to use in commerce, without Nike's permission or authorization, the Asserted Marks and/or confusingly similar marks, in connection with products Defendants manufacture, advertise, promote, distribute, and sell in the United States, including the Infringing Products.  Defendants have used the Asserted Marks with the knowledge of, and the intent to call to mind and create a likelihood of confusion with regard to and/or trade off the Asserted Marks.

111.    Defendants' use of the Asserted Marks (a) constitutes infringement of the Asserted Marks; (b) has confused, and is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendants or Defendants' Infringing Products with Nike or Nike's products; and (c) is likely to cause such

31

people to believe in error that Defendants' Infringing Products have been authorized, sponsored, approved, endorsed, or licensed by Nike or that Kiy is in some way affiliated with Nike.

112.    Nike has no control over the nature and quality of the Infringing Products Defendants offer, and Nike's reputation and goodwill will be damaged – and the value of the Asserted Marks jeopardized – by Defendants' continued use of the Asserted Marks and/or confusingly similar marks.  Because of the likelihood of confusion between Defendants' Infringing Products and the Asserted Marks, any defects, objections, or faults found with Defendants' Infringing Products will negatively reflect upon and injure the reputation that Nike has established for the products it offers in connection with the Asserted Marks.  As such, Defendants are liable to Nike for infringement of its registered marks under New York General Business Law Section 133.

113.    As a direct and proximate result of Defendants' wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate.  Unless enjoined, Defendants will continue to use the Asserted Marks and/or confusingly similar marks, and will cause irreparable damage to Nike for which Nike has no adequate remedy at law.  Thus, Nike is entitled to an injunction restraining Defendants and, as applicable, their officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of infringement.

114.    Nike is further entitled to recover from Defendants the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of Defendants' wrongful acts.

115.    Defendants' use of the Asserted Marks and/or confusingly similar marks has been intentional and willful.  *See* Exhibits 6-7.  Defendants' bad faith is evidenced at least by the

similarity of the Infringing Products to the Asserted Marks, and through Defendants' continued use of Nike's Asserted Marks after being on notice of Nike's claims..

116.     As a result of Defendants' conduct, Nike is entitled to injunctive relief enjoining Defendants' conduct described above.

### COUNT VI:  DILUTION UNDER NEW YORK GENERAL BUSINESS LAW § 360-L

117.     Nike repeats and alleges each and every allegation of paragraphs 1 through 116, above, as though fully set forth herein.

118.     Defendants' offers to sell, sales, distribution, and/or advertisement of the Accused Products violates section 360-L of New York General Business Law.

119.     Defendants' use of the Asserted Marks and/or confusingly similar marks on the Accused Products that are substantially similar to the Asserted Marks is likely to dilute the Asserted Marks at least by eroding the public's identification of the Asserted Marks with Nike and by lessening the capacity of the Asserted Marks to identify and distinguish Nike footwear products.

120.     Defendants' use of the Asserted Marks and/or confusingly similar marks has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Nike for which Nike has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Asserted Marks.

121.     Defendants' use of the Asserted Marks and/or confusingly similar marks has been intentional and willful.  *See* Exhibits 6-7.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the Asserted Marks, and through Defendants' continued use of Nike's Asserted Marks after being on notice of Nike's claims..

122.     As a result of Defendants' conduct, Nike is entitled to injunctive relief enjoining Defendants' conduct described above.

**JURY DEMAND**

123.     Pursuant to Federal Rule of Civil Procedure 38(b), Nike hereby demands a trial by jury of all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Nike respectfully prays for:

1.     A judgment and order that Defendants have willfully (A) infringed Nike's Asserted Marks in violation of 15 U.S.C. §1114 and New York General Business Law § 133, (B) used false designations of origin in violation of 15 U.S.C § 1125(a), (C) diluted at least the Nike Asserted Marks in violation of 15 U.S.C. § 1125(c) and New York General Business Law § 360-L, and (D) violated Nike's common law rights in Nike's Asserted Marks.

2.     A judgment and order enjoining Defendants and Defendants' affiliates, officers, agents, employees, attorneys, and all other persons acting in concert with Defendants, during the pendency of this action and permanently thereafter from:

    a.     Manufacturing, transporting, promoting, advertising, publicizing, distributing, offering for sale, or selling any products (including but not limited to the Infringing Products) under Nike's Asserted Marks, any marks substantially indistinguishable therefrom, or any other marks, names, symbols, or logos which are likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that any products that Defendants caused to enter the stream of commerce or any of Defendants' commercial activities are sponsored or licensed by Nike, are authorized by Nike, or are connected or affiliated in some way with Nike or Nike's Asserted Marks;

b. Manufacturing, transporting, promoting, advertising, publicizing, distributing, offering for sale, or selling any products (including but not limited to the Infringing Products) under Nike's Asserted Marks, any marks substantially indistinguishable therefrom, and/or confusingly similar marks;

c. Implying Nike's approval, endorsement, or sponsorship of, or affiliation or connection with, Defendants' products, services, or commercial activities, passing off Defendants' business as that of Nike, or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with Nike and from otherwise interfering with or injuring Nike's Asserted Marks or the goodwill associated therewith;

d. Engaging in any act which is likely to dilute the distinctive quality of the Nike Asserted Marks and/or injures Nike's business reputation; and

e. Knowingly assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 2(a) to (d) above.

3. An order that Nike is the exclusive owner of the Asserted Marks and that such marks are valid and protectable;

4. An order that Defendants be required to deliver to Nike for destruction any and all shoes, apparel, digital files, packaging, printed graphics, promotional materials, business cards, signs, labels, advertisements, flyers, circulars, and any other items in any of their possession, custody, or control bearing Nike's Asserted Marks, any marks substantially indistinguishable therefrom, or confusingly similar marks;

5.     An order granting an award of damages suffered by Nike according to proof at the time of trial;

6.     An order that Defendants account to Nike for any and all profits earned as a result of Defendants' acts in violation of Nike's rights,

7.     An award of three times the amount of compensatory damages and increased profits pursuant to 15 U.S.C. § 1117;

8.     An award of statutory damages pursuant to 15 U.S.C. § 1117(c);

9.     An order granting an award of punitive damages for the willful and wanton nature of Defendants' aforesaid acts under the common law;

10.     An order granting pre-judgment interest on any recovery by Nike;

11.     An order granting an award of Nike's costs, expenses, and reasonable attorneys' fees; and

12.     Granting such other and further relief as is just and proper.

Dated: November 30, 2022          ARNOLD & PORTER KAYE SCHOLER LLP

By: _/s/ Michael J. Sebba_

Michael J. Sebba
  Michael.Sebba@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: (213) 243-4000
Facsimile: (213) 243-4199

Christopher J. Renk (*pro hac vice* to be filed)
  Chris.Renk@arnoldporter.com
Michael J. Harris (*pro hac vice* to be filed)
  Michael.Harris@arnoldporter.com
Aaron Bowling (*pro hac vice* to be filed)
  Aaron.Bowling@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, Illinois 60602-4231
Telephone: (312) 583-2300

Facsimile: (312) 583-2360

Bridgette C. Gershoni (*pro hac vice* to be filed)
  Bridgette.Gershoni@arnoldporter.com
Michael J. Gershoni (*pro hac vice* to be filed)
  Michael.Gershoni@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Telephone: (202) 942-6745
Facsimile:  (202) 942-5999

*Attorneys for Plaintiff Nike, Inc.*