March 27, 2023

**VIA EMAIL AND ECF**

Hon. Victor Marrero
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

  Re: *Nike Inc. v. By Kiy LLC et al.*, No. 1:23-cv-2431-VM (S.D.N.Y.)

Dear Judge Marrero:

  Plaintiff Nike, Inc. ("Nike") and Defendants By Kiy LLC, Nickwon Arvinger, and David Weeks (collectively, "By Kiy") submit this joint letter pursuant to Your Honor's March 7, 2023 Order [Dkt. 65].

**1.**  **Brief Description of the Case**

  a. Nike's Brief Description of the Case:

  Nike accuses By Kiy of infringing four trademarks related to Nike's Air Jordan 1 sneakers, including the Air Jordan 1 High trade dress (U.S. Reg. No. 6,368,694), the Air Jordan 1 Low OG trade dress (U.S. Reg. No. 6,368,691), the outsole design trade dress (U.S. Reg. No. 3,721,064), and the Jordan Wings trademark (U.S. Reg. No. 3,725,535) (collectively, the "Asserted Marks"). Nike accuses By Kiy of infringing the Asserted Marks by manufacturing, promoting, and selling footwear products that bear the Asserted Marks and/or confusingly similar marks (the "Accused Products"). Examples of the Accused Products are pictured below next to the Asserted Marks.



March 27, 2023
Page 2



Nike seeks, among other things, a permanent injunction preventing By Kiy from infringing the Asserted Marks, damages and/or disgorgement of By Kiy's profits from the Accused Products, and attorneys' fees.

By Kiy asserts Counterclaims seeking Declaratory Judgments for Invalidity and Cancellation of Nike's U.S. Trademark Reg. Nos. 3,721,064; 6,368,691; and 6,368,694. Nike denies By Kiy's Counterclaims, raises the affirmative defense of failure to state a claim upon which relief can be granted, and denies By Kiy is entitled to any of the relief it seeks in its Counterclaims.

March 27, 2023
Page 3

      b.    <u>By Kiy's Brief Description of the Case</u>:

By Kiy contends that By Kiy's shoes differ in material ways from Nike shoes, that By Kiy has its own distinct brand and design following, that By Kiy products have always been intended to be different and distinctive from Nike's shoes, and that By Kiy shoes have been universally perceived by consumers as not being produced by Nike.  In fact, even consumers in the YouTube videos and social media comments that Nike cited as evidence of consumer "confusion" in its Complaint pointed out the differences between the two brands' shoes.  Through this litigation, Nike is attempting to control legitimate competition in unlawful ways.

On a version of the By Kiy shoes, for instance, there are at least 14 differences between the shoes, including without limitation:

1. Side panel:  the signature By Kiy bolt logo placed on the side panel extending into and past the front panel.  There is no Swoosh or (or Swoosh-like emblem) on the side of the shoe;
2. Collar:  a straight high collar with less curvature;
3. Eyelets (1):  a unique and distinctive double panel design on top of the shoe that encompasses the eyelets for the shoelaces;
4. Eyelets (2):  a straightened bottom panel on the double-panel design on top of the shoe that encompasses the eyelets for the shoelaces;
5. Front panel:  a distinctive front panel with the back part of the panel cut out to fit the front of the By Kiy signature bolt logo;
6. Back heel:  a distinctive back heel panel that is split into two separate pieces and contains different stitching than Nikes Air Jordan 1;
7. Tongue:  a signature By Kiy logo (Registered Trademark No. 6932389) on the tongue with no Nike branding;
8. Outsole:  a unique outsole with wider panels and miniature By Kiy signature bolt logos throughout the outsole;
9. Toe box:  a higher more rounded toe box;
10. Insole:  a By-Kiy-branded insole;
11. Midsole:  a shorter more compact midsole due to the fact that By Kiy does not use Nike's air sole or anything similar in the midsole;
12. Outside/Inside Side Panels:  No Nike swoosh (or swoosh-like emblem) on any of these panels;
13. Outside Collar:  No Nike wings logo or branding; and
14. Tongue / General:  No "NIKE AIR" lettering on the tongue or anywhere else.

March 27, 2023
Page 4



March 27, 2023
Page 5







March 27, 2023
Page 6



March 27, 2023
Page 7

Such characteristics should have avoided a dispute with Nike or others, because By Kiy shoes differ in noticeable ways from Nike products and other purportedly trademarked products. The very intent of the characteristics of a By Kiy sneaker is to create distinctive shoe that would be recognized as a By Kiy product.

It is unlikely that Nike will be able to show that purchasers of By Kiy shoes have mistakenly believed that they are buying a Nike shoe. Apart from the differences set out above and the prominent lightning bolt on the By Kiy shoes, By Kiy are sold through specialized By Kiy branded retail outlets, not the channels of commerce used by Nike. By Kiy shoes are made from premium materials and sell for much higher prices than Nike shoes. By Kiy is is a brand with particular success in appealing to black consumers in the United States, in part because it is known to be led by two young black entrepreneurs.

Regardless, By Kiy does not believe that its activities have ever impacted Nike's business and that Nike will not be able to establish damages. Nike has agreed or acquiesced to other designers using designs materially identical to those of By Kiy. Nike's efforts in this case appear to be designed, in part, to "send a message" to other boutique sneaker makers and to intimidate other smaller market participants into complying with Nike's wishes or face litigation.

By Kiy accordingly denies claims of infringement and raises the following affirmative defenses: laches, acquiescence, waiver, estoppel, utilitarian functionality, naked licensing, public domain, Patent Act bar, trademark claims based on design of goods, trademark claims based on features of goods, fair and descriptive use, genericity, unclean hands, and the first amendment. By Kiy denies Nike is entitled to any of the relief it seeks in its Complaint.

***

In the Counterclaim, By Kiy contends that, even if By Kiy's shoes were not materially different from Nike shoes, Nike's claimed trademarks are unenforceable – i.e., relatively generic sneaker shapes are not valid trademarks. The shoe shapes at issue are different than, for instance, Nike's "Swoosh" (the famous checkmark insignia that appears on Nike products), which is a valid trademark.

The images presented by Nike in its Complaint and this letter are somewhat misleading because the purported shoe design "trademarks" only include certain lines. The language of the purported trademarks excludes certain aspects of the shoe shape. For instance, this is one of Nike's purported trademarks:

March 27, 2023
Page 8



      This disembodied image is not the makings of valid or plausible trademark or trademark claim.  A reasonable consumer would not see the above image and say "that's a Nike" -- as opposed to "those might be parts of a high-top basketball shoe."  To By Kiy's knowledge, Nike has never presented any evidence (any research, empirical study, etc.) in any case that consumers recognize the elements of the shoe designs and associate them with Nike.

      Without a Swoosh, the purported trade dress depicted in these registrations does not have sufficient "secondary meaning" to be perceived as a "designation of origin."  With By Kiy's branding and trademarks all over the By Kiy shoe no reasonable consumer could be confused.

      By Kiy therefore believes that Nike's claims in this case are improper under the trademark laws and harm legitimate free enterprise.  By Kiy asserts Counterclaims seeking Declaratory Judgments for Invalidity and Cancellation of Nike's U.S. Trademark Reg. Nos. 3,721,064; 6,368,691; and 6,368,694.

**2.**     **Contemplated Motions**

      <u>Joint</u>:  The parties contemplate filing motions for summary judgment or partial summary judgment.

      <u>Nike</u>:  Nike intends to bring a Motion for a Protective Order to govern the use and disclosure of confidential information and documents in this case. Protective Orders are common and necessary in intellectual property cases like this one. Indeed, the parties have

March 27, 2023
Page 9

already exchanged Requests for Production of Documents that require each side to produce confidential documents and information. By Kiy's stated concern below that the Protective Order must prohibit mass designations of non-confidential documents is a non-issue. Nike agrees neither side should be permitted to mass designate non-confidential documents.

By Kiy:  While By Kiy will agree to the entry of a Protective Order, it will request terms in such an Order that prohibit mass designations of material as confidential and have appropriate remedies for inappropriate or abusive designations of material as confidential, that is not confidential.  In previous litigation in which undersigned counsel, John Durrant, was lead defense counsel, *Nike, Inc. v. La La Land Production & Design, Inc.*, Case No. 2:21-cv-0443 (C.D. Cal.) ("*La La Land*"), Nike used confidentiality designations inappropriately; mass designating, for instance, documents as confidential that had no conceivable basis for the designation.

While this as an "intellectual property dispute" of a sort, it is not one where there are obvious issues of broad-based confidentiality or sensitive information, such as proprietary software code or the secret ingredients of a beverage.  It is a case about the appearance of shoes, generally involving facts that are or should be in the public domain and accessible to observers of the courts and shoe industry at large.

3. **Prospect for Settlement**

The parties engaged in settlement discussions prior to Nike's filing of this action. The parties were unable to resolve their disputes.

Nike:  Nike believes settlement is unlikely at this time.

By Kiy:  While By Kiy strongly disagrees with the merits of Nike's claims, By Kiy continues to believe that a settlement should be achievable in this case without litigation. Reasonable minds can differ about the scope of the trademark laws, but reasonable parties and capable counsel should be able to arrive at a rational outcome here without costly litigation.

4. **Magistrate Judge Consent**

The parties do not consent to proceed before the Magistrate Judge designated for this action.

March 27, 2023
Page 10

5. **Case Scheduling**

   A. **Nike's Position:**

   Duration of Fact Discovery.  Nike proposes a discovery period consistent with the default guidelines of this Court and Your Honor's March 7, 2023 Order [Dkt. 65], which require all fact discovery to be completed within 120 says.

   By Kiy's request for a discovery period that is "at least" more than double the amount of time provided for in Your Honor's model Case Management Plan and March 7, 2023 Order (*see* Dkt. 65) is not proportional to the needs of the case, is an attempt to weaponize discovery, and would lead to more (not less) expense for the parties.

   By Kiy does not provide a reasonable basis for its request to double the discovery period. First, By Kiy's assertion that "Nike's case does not depend on discovery nearly as much as By Kiy's case" is unsupported and incorrect. Even if it were true, By Kiy does not explain why it warrants doubling the discovery period.

   Second, By Kiy's assertion that the size of the respective parties should bear on the amount or length of discovery also fails to support its request to double the discovery period. Any concerns about conserving the parties' resources supports a shorter, not a longer, discovery period.

   Third, and finally, By Kiy's suggestion of discovery misconduct in a previous litigation is inaccurate, irrelevant, and inappropriate. By Kiy's counsel in this case represented a party adverse to Nike in a prior lawsuit for about five (5) months before being replaced by other counsel. The lawsuit involved different parties, different facts, and different intellectual property rights not at issue here. In any event, in the short period of time they participated in that case, counsel attempted to manufacture a discovery dispute. They were unsuccessful – there was neither discovery misconduct nor discovery motion practice. Moreover, after new counsel appeared in that case, the parties proceeded to litigate in a cooperative and orderly manner without any discovery-related motions all the way through final judgment on the merits in Nike's favor.

   Number of Depositions.  Nike proposes no more than five (5) fact depositions per side, and no deposition exceeding six (6) hours on the record. Nike notes that it will identify two (2) Nike witnesses in its Initial Disclosures, and does not believe either parties' claims in this case justify taking more than five (5) fact depositions.

   By Kiy's request to either "not set a limit" or double the amount of fact depositions provided by Your Honor's Individual Rules of Practice (Section IV(2)) is unnecessary and should be rejected. First, By Kiy fails to provide any reasonable basis for doubling the number of depositions, and instead merely speculates that it may need to take more than

March 27, 2023
Page 11

five depositions of Nike witnesses. Second, By Kiy's proposal is ripe for harassment and will only encourage By Kiy and its counsel to continue to attempt to weaponize discovery.

**B. By Kiy's Position:**

Duration of Fact Discovery.  By Kiy requests at least 250 days to conduct fact discovery.  By Kiy believes that 120 days is an unrealistic timeframe for parties with limited resources and no insurance coverage to conduct litigation against Nike, a party with deep resources.

By Kiy also believes that Nike's case does not depend on discovery nearly as much as By Kiy's case.  Nike has argued that its trademark registrations are dispositive regarding their rights and the images on their purported marks need only be compared to the By Kiy shoes to establish liability.  By Kiy believes that there are material differences between the shoes By Kiy makes and the purported trademarks but that, nevertheless, Nike made statements to the USPTO regarding, for instance, the purported distinctiveness of generic shoe designs that were misleading and not based in factual evidence.  By Kiy accordingly needs documents and depositions regarding the basis (or lack thereof) for Nike's claimed trademarks, something that Nike has been resistant to provide in the past.

In *La La Land*, John Durrant, who is counsel for By Kiy here, found Nike's approach in discovery to be unusually unyielding – in 22 years of his practice, including as an equity partner in the Litigation Department at Paul Hastings in which he represented major corporations as plaintiffs and defendants, it was among the most improper responses to discovery he has experienced.  The approach seemed calculated to financially harm a much smaller opponent.

Nike claims *LA LA Land* was a "different parties, different facts, and different intellectual property rights," but a cursory review of the complaint and counterclaim in the *La La Land* case shows that claim is misleading.  The cases include numerous comparable and identical allegations, and in both that case and this case Nike has asserted similar or identical rights regarding "trade dress" trademarks – basically, calling elements of generic shoe shapes "trademarks."  The discovery that has been served by Nike in both cases is similar.

Among other things, in *LA LA Land*, Nike:

- Initially issued blanket objections (without agreeing to produce documents) to almost all requests for production and only changed its baseless position after stringing along meet and confers.

- Dumped 97,000 pages of records that were almost entirely neither requested nor relevant to the dispute.

- Marked records as confidential that were not confidential.

March 27, 2023
Page 12

- Falsely claimed to have complied with discovery requests.

- Unsuccessfully attempted to present discovery issues prematurely in a "surprise" submission to Magistrate Judge Castillo while circumventing meet and confer requirements and failing to present a required neutral statement of the facts. *See e.g.*, ECF No. 39 (Chambers Order of Magistrate Judge Denying Nike's Informal Telephonic Discovery Conference.)

- Noticed a deposition on short notice relatively early in the document discovery process, without clearing a date with counsel and delayed responding to requests to move the date.[1]

Perhaps past will not be prelude and this team at Arnold & Porter, who appear to be reasonable, will take a different approach in representing Nike than a largely different Arnold & Porter team in *LA LA Land*. But, if Nike directs its lawyers to take the same approach here as in *LA LA Land*, there will be numerous discovery disputes that will take significant time and require court involvement to resolve and there will be a significant danger of this lawsuit being litigated in a manner that is disproportionate to the relatively modest size of the actual dispute. It will certainly take longer than 120 days to complete discovery. (The client in *LA LA Land* was fortunate – it secured insurance coverage that allowed it to apply resources to the case through panel counsel and altered the trajectory of the case. There appears to be no such insurance coverage in this case.)

Nike claims that the size of the parties is a non-issue and that a shorter period of time for discovery will lower costs. This is a view not informed by the realities of representing small parties in cases against well-resourced opponents. A key aspect to controlling expense for a small party in a case like this is to control not just aggregate expense but also *the monthly pace of expenses*. One way to accomplish both aims is to limit the number of timekeepers on a matter. By Kiy therefore intends to primarily use two lawyers on this case. Arnold & Porter has many lawyers on this case and a client with effectively unlimited resources. In the *LA LA Land* case, for instance, Nike exploited its relative position. As just one example, Arnold & Porter sent five discovery meet and confer letters in the span of eight days at a time that it had been told the client was struggling to

---

[1] Nike's claim that counsel was "replaced" after "5 months" in *LA LA Land* is inaccurate and perhaps an effort to diminish counsel in the eyes of the Court. After the insurer acceded to demands to cover the defense of the lawsuit, insurer-provided counsel took over the defense of the case, but Mr. Durrant remained as counsel in the LA LA Land case on the counterclaims (insurance does not generally cover bringing claims), and filed a motion to withdraw (ECF 59) for professional reasons that are not relevant here, approximately 7 months after the commencement of the case. In any case, Mr. Durrant's involvement was more than long enough to experience Nike's misuse of the discovery process.

March 27, 2023
Page 13

maintain its defense. The unusual number and speed of the letters seemed disproportionate to the dispute and calculated to exert leverage.

While a well-resourced opponent will always have the upper hand in litigation, and that is, to some extent, unavoidable, the Court should take steps to ensure that a disparity in resources is not dispositive and prosecute its counterclaims. By Kiy should be allowed a reasonably paced schedule to assemble a defense. In this case, 120 days advantages Nike.

<u>Number of Depositions</u>. With discovery only just getting started, By Kiy does not currently know if they will need more than five fact depositions. There are unlikely to be five depositions to take from the defendants, as By Kiy is a small business with relatively few personnel. By contrast, Nike is a very large business that alleges rights concerning its business activities over four decades. Accordingly, it seems quite possible that By Kiy will need to take more than five depositions from Nike.

At this time, By Kiy requests that the Court either not set a limit on the number of depositions or set a limit of 10 depositions and provide that such limit can be increased with leave of the Court.

Nike makes a speculative claim that counsel would use depositions to "weaponize discovery." It appears Nike means that By Kiy might attempt to use discovery burden as leverage upon Nike. The claims is not true and not plausible. Among other things, as noted, Counsel for By Kiy litigate with a tight budget. Depositions are costly; By Kiy will therefore only seek depositions that seem likely to advance their case materially and that justify the expense. Also, it is inconceivable that By Kiy could ever materially burden Nike, a $185 billion corporation, let alone that it could do so by taking, say, 10 depositions instead of 5 depositions.

Best regards,

*Bridgette Gershoni*

Bridgette C. Gershoni
**Arnold & Porter Kaye Scholer LLP**

Christopher J. Renk
Michael J. Harris
Aaron P. Bowling
Michael J. Gershoni
Michael J. Sebba

Counsel for Plaintiff Nike, Inc.

March 27, 2023
Page 14

John Durrant
**The Durrant Law Firm**

Zak Kurtz, Esq
**Sneaker Law Firm, PLLC**

Counsel for Defendants By Kiy LLC, Nickwon Arvinger, and David Weeks