# Arnold & Porter

June 26, 2023

**VIA EMAIL**

John Durrant
john@durrantlawfirm.com
The Durrant Law Firm
2337 Roscomare Rd., Suite 2180
Los Angeles, California 90077

Zakari Kurtz
zak@sneakerlawfirm.com
Sneaker Law Firm, PLLC
928 Washington St
Baldwin, NY 11510

Re:   Nike Inc. v. By Kiy LLC et al., No. 1:23-cv-2431-VM (S.D.N.Y.)

John and Zak,

    We write in response to your June 22, 2023 email and June 23, 2023 letter. As an initial matter, there is considerable exigency for resolution of the disputes outlined in Nike's draft joint letter-motion. While we understand that By Kiy is of the position that "[t]he schedule in this case was never going to be workable" (2023-06-23 J. Durrant Ltr.) and would like to now—after considerable delay and inaction on By Kiy's part—extend the schedule, Nike will not agree to do so.

    Now there is less than a month until the close of fact discovery. Nike has repeatedly attempted to resolve these disputes, including through the parties' meet-and-confer and multiple follow-ups since. As we explained, it was incumbent on By Kiy to timely identify where it disagreed with Nike's memorialization of the parties' positions so that we could have addressed those issues sooner. In fact, Nike specifically requested that By Kiy "let us know whether [Nike's May 18, 2023 memorialization] comports with [By Kiy's] recollection and, if not, let us know where your understanding differs." (2023-05-18 M. Gershoni Ltr.) Your June 23, 2023 letter confirms that By Kiy knew it disagreed with Nike's recollection of the parties' positions as memorialized in Nike's May 18, 2023 letter.[1] Your delay in informing Nike of By Kiy's disagreement, and continued emphasis on procuring "quid pro quo[s]" (2023-06-22 J. Durrant Email) as opposed to producing discovery Nike properly sought through timely requests for production, created the current exigency. With the close of fact discovery approaching, Nike can no longer permit By Kiy to delay further.

---

[1] 2023-06-23 J. Durrant Ltr. ("There is little value in a back and forth over what was said in a prior conversation about this request. We do not doubt the sincerity of your belief in your recollection, but it differs from Mr. Kurtz's notes from the meeting.").

**Arnold & Porter**

June 26, 2023
Page 2

We address the outstanding issues identified in your letter below and are providing herewith an updated draft joint-letter in view of the representations made in your correspondence last week. Please provide your redlines to the draft joint letter by Friday, June 30, 2023.

### I. Nike's Productions of Documents

We repeatedly explained that By Kiy's assertion that Nike has not produced documents "core to the dispute or By Kiy's requests" is unsupported and non-factual. The substance of the "issues" you identify in your June 23, 2023 letter confirms that Nike's position is correct.

Specifically, you state that you are "not sure why Nike has produced what it has produced. For instance, what possible purpose does Nike think producing a very large volume of Nike advertisements serves, or massive trove of pictures of Nike shoes,[2] or large numbers of pictures of celebrities wearing Nike shoes." (2023-06-23 J. Durrant Ltr.) Yet, you explicitly requested, for example:

> 15. All DOCUMENTS RELATING, supporting, or refuting NIKE's allegation that the Trade Dress Registrations contain or embody any characteristics that were or are "distinctive," as that term is used in any way, including without limitation as it is used in trademark law, by the USPTO, or by NIKE.

It is a basic principle of trademark law that "[p]ublic association of a business symbol with a certain source and quality of goods or services is most often achieved through the dual channels of actual sales and advertising." 2 McCarthy on Trademarks and Unfair Competition § 15:50 (5th ed.). In fact, "[a]dvertising can create a mental association even in the minds of those buyers who have never actually purchased that product." *Id.*

Relatedly, the Second Circuit considers several factors when determining secondary meaning (or "distinctiveness," as your request states), including (1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) unsolicited media coverage of the product; (4) sales success; (5) attempts to plagiarize the mark; and (6) length and exclusivity of the mark's use. *See, e.g.*, *Metrokane, Inc. v. The Wine Enthusiast*, 160 F. Supp. 2d 633, 639 (S.D.N.Y. 2001).

The remaining mischaracterizations and generalizations are likewise unsupported, including for the reasons we previously included in our various correspondence. Moreover, your accusation that "Nike's proposed discovery Stipulation was an attempt to evade its discovery obligations" is neither justified nor pragmatic. Nike offered By Kiy

---

[2] It is unclear what "massive trove of pictures" you are referring to. That said, we do note that over 100 of the 126 documents in By Kiy's initial document production consisted of only "pictures of" By Kiy's sneakers, including dozens of duplicates.

June 26, 2023
Page 3

the opportunity to specifically identify custodians and search terms through a stipulated ESI order. Rather than negotiate over the terms of the stipulation, By Kiy categorically refused to any agreed-upon approach to conducting ESI discovery. Nike has, and is continuing to, conduct a reasonable search for ESI.

## II. By Kiy's Productions of Documents

By Kiy falsely contends that its initial document production contained "documents Nike specifically requested and that Nike said were important." In reality, the vast majority of By Kiy's initial document production merely included individual images of By Kiy's sneakers. And notably, these images contained dozens of duplicates, did not contain a single image of the first version of By Kiy's outsole (*see* Compl., ¶ 34), and was otherwise littered with entirely irrelevant and unrequested documents, such as drawings of what appears to be a By Kiy Sneaker snow globe (KIY0000032-33) and Dennis Rodman basketball cards that do not feature any By Kiy Sneaker (KIY0000001-04), among others. And, as explained in the draft joint letter-motion served herewith, By Kiy has still failed to produce any revenue or cost information for the infringing sneakers, despite refusing to respond to interrogatories regarding the same because "documents related to the calculation of profits by experts (i.e., revenue and cost documents) are going to be produced." (2023-05-09 J. Durrant Letter).

Moreover, contrary to the assertions in your letter, By Kiy's productions to date do not appear to contain "Design Files." As you know, Nike defined "Design File" in its requests for production as "any Document or Thing that is produced or created using a graphic or design application, including but not limited to Adobe Illustrator, Microsoft Paint, Affinity Designer, and Sketch. 'Design File' includes, by way of example and not by limitation, Adobe Illustrator files with the '.ai' extension." In fact, you acknowledged this definition as early as May 9, 2023. *See* 2023-05-09 J. Durrant Ltr. ("Please accept our apology for missing the definition of 'Design File.'"). Yet, By Kiy's productions do not contain, for example, any Adobe Illustrator files—nor has By Kiy objected to producing such discovery.

It is public knowledge that By Kiy uses Adobe Illustrator for designing sneakers, as shown below:

**Arnold & Porter**

June 26, 2023
Page 4



**2022-09-13 Instagram post by @kool.kiy**
**(available at https://www.instagram.com/p/CieKVREDWFn/)**

**2022-01-03 Instagram post by @kool.kiy**
**(available at https://www.instagram.com/p/CYQZ_XKgQfK/)**

By Kiy is obligated to produce such "Design Files" as they are kept in the ordinary course of business (*i.e.*, as an ".ai" file) pursuant to Fed. R. Civ. P. 34(b)(2)(E). No such "Design Files" have been produced. Please confirm that By Kiy will produce the requested "Design Files" in native form by June 30, 2023.

### III.      By Kiy's Request for Production No. 13

As memorialized in our May 18, 2023 letter, By Kiy informed Nike that it would draft new requests seeking documents "sufficient to show" the types of information referenced in the Request, which By Kiy did for the first time on Friday, June 23, 2023.

Nike's objections to Request No. 13 are in its responses to By Kiy's First Set of Requests for Production. In view of Nike's objections, Nike agreed to conduct a reasonable search and produce responsive, non-privileged declarations and affidavits submitted to the USPTO in support of U.S. Trademark Registration Nos. 6,368,694; 6,368,691; and 3,721,064. If By Kiy believes it is entitled to broader discovery for Request No. 13 in view of Nike's objections, please provide us with your position and support.

### IV.      Nike's Request for Production No. 2

To better assess By Kiy's proposal, please let us know by Wednesday, June 28, 2023 whether "the version 1.0 and 2.0" referenced in your letter (2023-06-23 J. Durrant Ltr.) constitute "each silhouette used for the By Kiy Sneakers."

With respect to By Kiy's demand that "Nike let us know immediately if it will not produce" (2023-06-23 J. Durrant Ltr.) physical samples "sufficient to show each type of a NIKE product that NIKE alleges BY KIY has unlawfully copied or regarding which BY KIY has infringed any trademark" (2023-06-23 By Kiy's Second Set of Requests for Production), we feel the demand is inappropriate and inconsistent with Fed. R. Civ. P. 34, which provides parties receiving such discovery requests 30 days to respond. Nevertheless, Nike will make available for inspection an Air Jordan 1 High and an Air Jordan 1 Low OG.

### V.       Nike's Request for Production No. 22

As we explained in our prior correspondence and in our May 18, 2022 memorialization of the parties' positions during the meet-and-confer, Nike agreed to limit the scope of the Request to only representative examples of customer complaints regarding By Kiy Sneakers that are not equally available to Nike and refer to Nike to address By Kiy's concerns. While we understand that your recollection *now* differs, we also understand that you could have, but apparently chose not to, inform us of that until a month after our meet-and-confer and the date you received our letter memorializing the same.

Nike will respond to your request at the appropriate time.

**Arnold & Porter**

June 26, 2023
Page 6

### VI. Nike's Interrogatories

Nike's interpretation of S.D.N.Y. Local Rule 33.3(c) is based on the plain language of the rule. As we explained, Local Rule 33.3(c) expressly provides that contention interrogatories are appropriate. *See* S.D.N.Y. Local Rule 33.3(c) ("[I]nterrogatories seeking the claims and contentions of the opposing party may be served unless the Court has ordered otherwise."). If you have any caselaw to support your view that contention interrogatories are not appropriate in the Southern District of New York, we invite you to include it in your redlines to the parties' joint letter-motion addressing this dispute.

### VII. Depositions

Your interpretation of the Case Management Plan is inconsistent with its plain language. While it is true that the Case Management Plan states that "depositions are not to be held until all parties have responded to initial requests for document production," all parties here *have* "responded to initial requests for document production" on May 1, 2023 (*i.e.*, nearly two months ago). Accordingly, the timing of our notices for deposition are more than consistent with the Case Management Plan.

Moreover, our notices of deposition explicitly provide that the parties may mutually agree on another date and time. If you have a reasonable suggestion for another date and time consistent with the Court's scheduling order, we are amenable to considering it.

Best regards,

*Michael Gershoni*

Michael Gershoni