**THE DURRANT LAW FIRM**

July 14, 2023

<u>Via ECF</u>

Hon. Sarah L. Cave
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St., Courtroom 18A
New York, NY 10007-1312

Re:   *NIKE v. BY KIY, et al.* – 1:23-cv-02431-VM (S.D.N.Y.) – Response to ECF No. 90

Dear Judge Cave:

Undersigned counsel, who represents Defendants By Kiy, LLC, Nickwon Arvinger, and David Weeks (collectively, "Defendants") has 22 years' experience, including as an equity partner at Paul Hastings respectfully and solemnly attests to each of the factual representations herein under penalty of perjury.  Plaintiff Nike Inc.'s Letter Motion (i) neglects to inform the Court regarding key facts; (ii) omits compromises by counsel in negotiations and misstates Defendants' position (most obviously, we are not currently insisting on a deposition of Tinker Hatfield if another witness with first-hand factual knowledge is available); (iii) mischaracterizes the record; and (iv) fails to inform the Court regarding counsel's schedule.

### I.   30(b)(6) Deposition.

Nike's argument is no less than it should not sit for any 30(b)(6) deposition.  Such is Nike's aversion to a deposition in which the Company will be subject to binding admissions, that yesterday Nike remarkably proposed that the parties both agree to forego 30(b)(6) depositions all together.  See *Rodriguez v. Pataki*, 293 F. Supp. 2d 305, 311 (S.D.N.Y.) (entity must "produce a person with knowledge whose testimony will be binding on the party").

Nike has two related objections to the depositions:  (i) that not enough notice was given for the deposition; and (ii) that the deposition notice is overbroad.  Nike neglects to mention something crucial:  during yesterday's meet and confer Defendants said repeatedly that we would consider modifying or removing *any* request in the 30(b)(6) notice.  When Defendants indicated this, Nike's associates on the call seemed taken back and unsure how to react.  They would not engage.  Defendants sent an email to Nike after the call stating:  "<u>**We indicated that we would be willing to discuss modifying or removing any of the topics in the FRCP 30(b)(6), deposition notice.**</u>"  Exhibit A.  Nike did not respond.  Nike does not tell the Court about this offer of compromise and claims that Defendants insisted on "all but one" deposition topic.  This is simply not true; Exhibit A is contrary.  Nike tries to make the time seem shorter than it is (e.g., using "business days," not "days;" using East Coast time for a deposition on the West Coast, to claim a deposition notice was sent a day later than it was actually sent), Defendants did not give

---

The Durrant Law Firm, APC
2337 Roscomare Road, Suite 2180
Los Angeles, California 90077

**Phone**: 424-273-1962
**Mobile:** 310-895-6318
**Email:** john@durrantlawfirm.com

unusually short notice.  Defendants notified Nike on July 8, **17 days prior to the current notice deposition**[1] that they wanted to take a 30(b)(6) ("PMK") deposition of Nike and asked for dates.  At least in the Central District of California, asking for dates ahead of time is viewed as important.[2]  Now, I'm admittedly "not from these parts," but that seems like a good rule anywhere, and basic consideration for witnesses and counsel.  It is why I didn't just send out a notice.

When Nike provided some dates on July 10, it did not provide a date for its 30(b)(6) deposition.  This created a quandary on how to issue the notice.  At 10:05 am PT on July 11, I sent an email to Nike's counsel asking "Who is Nike's PMK?"  At 12:11 pm PT I followed up, "Just wanted to follow up – we do want to get our notices out yesterday, so visibility on the PMK, in particular, will be helpful, because we won't need to take an individual deposition of a person acting as PMK."  Nike's counsel did not answer this question, but at 4:38 pm PT said "To the extent you're asking us to identify which persons Nike may use to support its claims and defenses, Nike identified such persons and the subjects of information they are knowledgeable about in its initial disclosures and supplements thereto, including Charles Williams, Jeff Atienza, Donald Kelsey, and Forbes Campbell."  That was not what we were asking for; we were asking for a PMK, not someone who would know certain things personally, but someone to testify *for Nike* and could bind the company.  *They were avoiding answering the question.*  After all that, yesterday Nike lawyers admitted that, as we expected, one of the currently noticed witnesses indeed would be the 30(b)(6) if it proceeds.

At any rate, late on July 11 Pacific Time – fully, **14 days prior to the time of the current deposition**, Defendants sent out a 30(b)(6) deposition notice.  *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 327 (N.D. Ill. 2005) (10 days' notice typically sufficient and collecting cases).  While Nike complains about the numbers of topics, they closely resemble Nike's own 30(b)(6) notice (Exhibit B) and Defendants' Requests for Production.  There should be no surprises.  Nevertheless, Nike sent an aggressive letter on July 12 demanding, not that we modify deposition notice, but that we withdraw it entirely.

Instead of acceding to this demand, on July 12, I sent an Amended Deposition Notice.  (Exhibit C.)  It did not simply rearrange the prior notice, as Nike says; rather we moved the date 5 days out (from July 20 to July 25), cancelling another deposition scheduled for July 25, because the witness is only available on July 25.  We also removed many requests and narrowed others, it's a subset of the prior notice.  It is unclear how Nike gets its total number of requests and a number is simplistic way to decide overbreadth, anyway.  The current notice has 25 topics because Defendants withdrew one request for deposition and appears not just to have fewer topics than the notice Nike served on By Kiy (which has 29 requests with a litany of numerous subparts), but to have a narrower scope.  (Exhibit B.)  The operative 30(b)(6) notice to Nike largely concerns basic facts about By Kiy, Nike's basis for its claims, and the Jordan-1 alleged trade dress – nothing remarkable.  Nike's concerns about scope are a pretext:  they actually just don't want any 30(b)(6) deposition.  And, as proof of this pretext, they refused to discuss any narrowing or removing of the requests even though Defendants repeatedly offered to do so.  (Exhibit A.)

---

[1] While Nike implies that Defendants did not serve a notice sooner because they thought the discovery deadline would be extended (Footnote 1), that is misleading, because Michael Gershoni, counsel for Arnold and Porter himself said the deadline may have to move.  Also, Nike has agreed to extend such deadlines in other similar cases pending in the District.

[2] C.D CAL PROFESSIONALISM GUIDELINES No. B. 2.  https://www.cacd.uscourts.gov/attorneys/admissions/civility-and-professionalism-guidelines#Scheduling

The Durrant Law Firm, APC
2337 Roscomare Road, Suite 2180
Los Angeles, California 90077

**Phone**: 424-273-1962
**Mobile**: 310-895-6318
**Email**: john@durrantlawfirm.com

II.   Tinker Hatfield.

Regarding Mr. Hatfield, it is important to note something, again, that Nike neglects to mention: **Defendants are not insisting on deposing Tinker Hatfield**. (Exh. A.)  If any other witness has personal knowledge of the facts we seek, then any other witness is fine with Defendants.  Instead of just proposing a substitute for Mr. Hatfield with similar knowledge, Nike chose to burden this Court.

Nike, for its part, considers the 1980s origin of the Jordan shoe as crucial to its narrative in this case.  *See* Complaint, ECF No. 1 at ¶¶ 20-24 ("Nike's Creative Director, Peter C. Moore,[3] designed the Nike Air Jordan 1 for Michael Jordan in 1984 during his rookie year in the NBA...")  Tinker Hatfield joined Nike in 1985, the same year as the Jordan-1 was first sold and worked with Mr. Moore.  Defendants contend that in the 1980s there were many shoes that resembled the Jordan-1 silhouette before and after the Jordan-1.  The general look of the high-top sneaker that the Jordan-1 employed became commonplace and relatively uninteresting.  Defendants believe that, from 1985-on, the Jordan-1 was never distinctive (other than because of its Swoosh, which is not at issue in this case), and that it was"Generic" (*see* Defendants' 13th Affirmative Defense, Genericity, ECF 53, p. 66) very similar to many others in the industry.  To the extent that Nike ever had any rights, its failure to police its trade dress over decades, starting in the 1980s, amounts to "Naked Licensing" (*see id.*, p. 65, Defendants' 7th Affirmative Defense).[4]

And, that's where Mr. Hatfield comes in.  Mr. Hatfield was the lead designer of Air Jordans III through XV, XX, and XX3.  These models used increasingly exotic designs to differentiate Jordan shoes the relatively generic shape of the Jordan-1.  Mr. Hatfield has personal knowledge – the *sine qua non* of an apex witness objection is that the witness lacks such knowledge.  The witnesses Nike has proposed (Messrs. Kelsey and Atienza) have much less experience at Nike and no personal knowledge of the events at issue in the 1980s.  They are also not designers.  Nevertheless, Defendants have repeatedly asked Nike to provide another witness with similar first-hand knowledge of Nike's design moves in the 1980s and the sneaker market at the time. (Exh. A.)  It doesn't have to be Tinker Hatfield.  Even if it were, Defendants would be amenable to shortening the deposition.  *Scott v. Chipotle Mexican Grill, Inc.* 306 FRD 120, 124 (SDNY 2015) (limiting apex depositions to 4 hours).[5]

III.   My Availability

Officers of the Court have a difficult job by choice.  But we are human.  This relatively small matter – which I took to help protect "the little guy"– is being litigated by Nike in a disproportionate and unduly aggressive manner.  It is unwarranted.  As I informed counsel, I worked a 15.5-hour day Wednesday[6,] and Thursday is now about 18.5 hours long.  I am counsel in two related  high-stakes financial cases in Silicon Valley, in which the Court invited my clients to file a motion for terminating sanctions and altered his schedule to allow an early hearing.  My briefs in both cases are due Monday.  Counsel knew this (*see* Exh. A) and did not inform the Court, falsely claiming the dispute is urgent and failing to accurately set forth our positions.  *Id.*  If the Motion is not denied, I would request a hearing after Tuesday morning.

---

[3] Mr. Moore is unavailable; he died last year.
[4] Nike only registered its Jordan trade dress in 2021.
[5] Prior to today's submission to Court, Nike has not claimed Mr. Hatfield is "unavailable."
[6] It's remarkable that Counsel excoriates counsel for not being available on this day, knowing this was my schedule.

---

The Durrant Law Firm, APC
2337 Roscomare Road, Suite 2180
Los Angeles, California 90077

**Phone**: 424-273-1962
**Mobile:** 310-895-6318
**Email:** john@durrantlawfirm.com

Respectfully submitted,

*[signature]*

**John Durrant, Esq.**
THE DURRANT LAW FIRM, APC

CC: ZAKARI KURTZ, ESQ.

The Durrant Law Firm, APC
2337 Roscomare Road, Suite 2180
Los Angeles, California 90077

**Phone**: 424-273-1962
**Mobile:** 310-895-6318
**Email:** john@durrantlawfirm.com