UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NIKE, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>BY KIY, LLC,<br>NICKWON ARVINGER, and<br>DAVID WEEKS,<br><br>      Defendants. | CASE NO.   1:23-cv-02431-VM |
| By Kiy, LLC,<br><br>      Counterclaimant,<br><br>v.<br><br>NIKE, INC.,<br><br>      Counterclaim-Defendant. | |

**BY KIY, LLC'S ~~FIRST~~ SECOND AMENDED NOTICE OF 30(b)(6) DEPOSITION OF PLAINTIFF NIKE, INC.**

    PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendant BY KIY, LLC, by and through its undersigned counsel, will take the deposition by oral examination of Nike, Inc., by and through person(s) designated to testify on behalf of the entity regarding the topics set forth in Exhibit A, in the above-captioned action at 8:00 am PT on July 25, 2023, or such other date and time upon which the parties mutually agree, via Zoom or other remote appearance or videoconference means, and continuing until completed or otherwise adjourned. The deposition will be taken before a notary public or other officer authorized by law to administer oaths, and will be recorded by stenographic, audio, and video

1

means, and may be recorded through the instant visual display of testimony (i.e., real-time transcription). The deposition will be taken for the purposes of discovery, use at trial in this action, and any other purposes permitted under the Federal Rules of Civil Procedure.

This Notice follows a letter from counsel for Defendants to counsel for Nike on July 8, 2023 (17 days prior to the new notice date), indicating that Defendants would depose a PMK and offering Nike the courtesy of providing dates for its witness. Nike declined to provide dates for a PMK deposition and implied that its identified witnesses would serve that role, an implication that appears to have been intentionally evasive and misleading.

Then, on July 11, 2023, Defendants sent a deposition notice for a PMK deposition on July 20, 2023. Nike complained that it did not have enough time to prepare for the deposition, even though Nike had pushed to keep the current discovery cut-off and even though the topics of the deposition notice mirrored the topics of the notice to By Kiy and Defendants' Request for Production. There surely should have been *no surprises*. ~~Now, as~~As a further accommodation, on July 12,, By Kiy has extended the deposition five more days, including a weekend, and reduced the number of topics significantly. Now, in the Second Amended Notice, By Kiy narrows the issues yet more. All of these changes have been undertaken ~~to avoid motion practice and~~

not because By Kiy believed Nike's objections were well taken. We have also ordered the topics in a way that we hope will make them more easily usable.

DATED: July 1~~2~~6, 2023          JOHN S. DURRANT
                                   THE DURRANT LAW FIRM, APC


                                   By: *John S. Durrant* _____
                                       John S. Durrant (*admitted pro hac vice*)
                                       Attorney for Defendant and Counterclaimant
                                       *By Kiy, LLC, and Defendants Nickwon*
                                       *Arvinger, and David Weeks*

DATED: July ~~12~~16, 2023         ZAKARI A. KURTZ, ESQ.
                                   SNEAKER LAW FIRM PLLC
                                   dba SNEAKER & STREETWEAR LEGAL SERVICES


                                   By: *Zakari A. Kurtz* _____
                                       Zakari A. Kurtz (NY Attorney No. 5242946)
                                       Attorney for Defendant and Counterclaimant
                                       *By Kiy, LLC, and Defendants Nickwon*
                                       *Arvinger, and David Weeks*

**EXHIBIT A**

**DEFINITIONS**

Each of these definitions and instructions is incorporated into each of the subjects and into each of the other definitions and instructions to which it pertains.

1. "Nike," "NIKE," "You," or "Your" shall refer to Plaintiff Nike, Inc. in the broadest sense consistent with the Federal Rules of Civil Procedure, including but not limited to its officers, directors, employees, members, partners, subsidiaries, and affiliates, and all persons and entities acting on its behalf or as its representative or agent.

2. "By Kiy" or "BY KIY" shall refer to Defendant and Counterclaim Plaintiff By Kiy, LLC in the broadest sense consistent with the Federal Rules of Civil Procedure, including but not limited to its past and present officers, directors, employees, members, partners, subsidiaries, and affiliates, and all persons and entities acting on its behalf or as its representative or agent.

3. "Present Litigation" shall mean Nike, Inc. v. By Kiy, LLC, Nickwon Arvinger, and David Weeks, Case No. 1:23-cv-02431-VM.

4. "Complaint" shall mean the Complaint that Nike filed in the United States District Court for the Southern District of New York on November 30, 2022, at Dkt. 1 in the Present Litigation or, if amended, the latest operative Complaint.

5. "Counterclaim" shall mean the Counterclaim that By Kiy filed in in the United States District Court for the Southern District of New York on November 30, 2022, at Dkt. 53 in the Present Litigation or, if amended, the latest operative Counterclaim.

6. "'535 Registration" means NIKE's U.S. trademark registered as Registration No. 3,725,535.

7. "'694 Registration" means NIKE's U.S. trademark registered as Registration No. 6,368,694.

8. "'691 Registration" means NIKE's U.S. trademark registered as Registration No. 6,368,691.

4

9.  "'064 Registration" means NIKE's U.S. trademark registered as Registration No. 3,721,064.

10. "Asserted Marks" or "Trade Dress Registrations" shall refer to NIKE's U.S. trademarks reflected in the '535 Registration, the '694 Registration, the '691 Registration, the '064 Registration, and all statutory and common law rights associated with the foregoing trademarks.

11. Affirmative Defenses" shall mean the Affirmative Defenses pleaded by By Kiy against Nike in By Kiy's Answer to Complaint and Affirmative Defenses; filed on February 13, 2023, at Dkt. 53 in the Present Litigation, or, if amended, the latest operative Answer.

12. "By Kiy Sneaker(s)" shall mean sneakers that By Kiy has sold and/or distributed in the United States, pursuant to the parties' agreement during their meet-and-confer on May 16, 2023.

13. "Document" or "Documents," as used herein, shall include, without limitation, all written or graphic matter or any other means of preserving thought or expression of every type and description regardless of origin or location, whether written, recorded, transcribed, taped, punched, filmed, microfilmed, or in any other way produced, reproduced or recorded, and including, but not limited to: papers, originals, drafts, copies or duplicates that are marked with any notation or annotation, copies or duplicates that differ in any way from the original, photographs, films, recordings, memoranda, books, records, pamphlets, circulars, handbooks, manuals, periodicals, files, envelopes, notices, instructions, transcripts, formal, informal, audited and unaudited financial statements, audit work papers, financial analyses, notes, telex messages, communications, reports, computer-sorted and computer-retrievable information, electronic mail, text messages, instant messages, internet messages, minutes, transcriptions, correspondence, offering circulars, graphs, tabulations, analyses, evaluations, projections, statements, telephone logs, questionnaires, surveys, indices, tapes, computer inputs or outputs, microfilm, magnetic tapes, accountings, writings, letters, telegrams, notes or records of telephone conversations and meetings either in writing or upon any mechanical or electronic devices, notes, accountants'

statements or summaries, appraisals, work papers, reports, purchase orders, invoices, canceled checks, check stub receipts, bank statements, studies, services, legal opinions, vouchers, minutes of meetings, designs, drawings, manuals, guidelines, notebooks, worksheets, promissory notes, diaries, desk calendars, charts, graphs, indices, ledgers, schedules, licenses, appointment books, payment records, stenographer notebooks, punch cards, computer databases (regardless of how maintained or stored), computer printout sheets, articles of incorporation, articles of association, by-laws, minutes, rules, directives, hotel charges, telephone bills, transfer books, proposals, prospectuses, offers, orders, sketches, diagrams, pictures, press clippings, sworn or unsworn statements of employees, tables of organizations, requisitions, and logs, which are in Responding Party's actual or constructive possession, custody, care or control.  DOCUMENT shall also include any removable "Post-It" notes or other attachments affixed to any of the foregoing, as well as the file, folder tabs, and labels appended to or containing any DOCUMENTS. DOCUMENTS includes ELECTRONICALLY STORED INFORMATION and COMMUNICATIONS, and any request for DOCUMENTS specifically includes a request for the same category of ELECTRONICALLY STORED INFORMATION and COMMUNICATIONS.  DOCUMENTS also includes, as used herein, all drafts and non-identical copies of any such DOCUMENT, including, but not limited to, those that contain markings, symbols, interlineations, comments, or notations of any kind on the front or back thereof.

    14.     "Electronic" means relating to technology having electrical, digital, magnetic, wireless, optical, electromagnetic, or similar capabilities.

    15.     "Electronically Stored Information" or "ESI" shall have the same meaning as provided for that term by Federal Rule of Civil Procedure 34(a)(1)(A), i.e., information that is stored in any Electronic medium.  "Electronically Stored Information" or "ESI" shall also mean the original (or identical duplicate when the original is not available) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind

and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, metadata, Electronic or digital certificates, signatures or Electronic signatures, or other means. "Electronically Stored Information" or "ESI" includes, by way of example and not by limitation, computer programs (whether private, commercial or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and/or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether such "Electronically Stored Information" or "ESI" exists in an active file, deleted file or file fragment. "Electronic Data" includes, but is not limited to, any and all items stored on computer memories, hard disks, diskettes and cartridges, network drives, network memory storage, archived tapes and cartridges, backup tapes, floppy disks, CD-ROMs, removable media such as Zip disks and their equivalent, magnetic tapes of all types, microfiche, and any other vehicle used for digital data storage and/or transmittal.  "Electronically Stored Information" or "ESI" also includes the file, folder tabs, and/or containers and labels appended to, or associated with each original and/or copy.  "Electronically Stored Information" or "ESI" also shall mean electronic media including without limitation any magnetic or other storage media device used to record ESI and  may include, but are not limited to, cloud storage located anywhere in the world, cloud storage located in the facilities of any business but under the direct or indirect control of YOU, any computer memories, hard disks, diskettes and cartridges, network drives, network memory storage, archived tapes and cartridges, backup tapes, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, and any other vehicle used for digital data storage and/or transmittal.

16. "Communication" or "Communications," as used herein, shall mean any and all forms of oral, written, and electronic transmission and shall include, without limitation, written contact by such means as letters, memoranda, e-mail, text messages, instant messages, Google chats, WhatsApp messages, Snapchat communications, Telegram messages, computer

7

communication, telegrams or telex messages, oral contact by such means as meetings and telephone conversations, and visual communication by such means as signals and sign language.

14. The terms "Person" or "Entity" shall mean any natural person, corporation, partnership, business, firm, proprietorship, company, joint venture, trust, agency, governmental agency or department, and any other business, governmental, legal, for-profit or nonprofit organization, association or other legal entity.

15. "Nike Sneaker(s)" refer to Nike's footwear products, including Air Jordan 1 High and Air Jordan 1 Low, Air Jordan KO, Air Jordan Terminator, or any other footwear products with similar designs as the Air Jordan 1 High and Air Jordan 1 Low.

16. Any word written in the singular herein shall be construed as plural or vice versa when necessary to facilitate the response to any Deposition Topic.

## DEPOSITION TOPICS

### Topics Related to By Kiy

1. Nickwon Arvinger, David Weeks, By Kiy, and/or By Kiy Sneaker(s) and internal Nike Documents concerning each of them.

2. The aspects of current By Kiy Sneakers that Nike considers trademark infringement ~~and, relatedly, a description of the sort of high-top sneaker product By Kiy could create that Nike would allow and not view as trademark infringement~~.

3. Any inspection of any By Kiy Sneaker by Nike.

4. Alleged secondary market confusion and By Kiy Sneakers.

5. Any public interest that would be served or disserved by an injunction issued with respect to By Kiy's alleged conduct.

6. When Nike became aware of By Kiy's products and any concern about trademark infringement with regard to By Kiy's products or regarding collaborations between By Kiy and third parties, including without limitation Modes Moose, Inc. d/b/a Moose Knuckles

~~7. By Kiy's Affirmative Defenses.~~

8

8.7.   Nike's Board of Directors and Executive Communications regarding By Kiy and trademark lawsuits.

9.8.   The facts You are aware of that support, refute, or relate to the application of the *Polaroid* factors to the Asserted Marks and By Kiy Sneakers in the Present Litigation, including: (i) the strength of the Asserted Marks, (ii) the similarity between the By Kiy Sneakers and the Asserted Marks, (iii) the similarity of the goods used in connection with the Asserted Marks and the By Kiy Sneakers, (iv) Your intent in designing the By Kiy Sneakers, (v) instances of actual confusion caused by the By Kiy Sneakers, (vi) sophistication of consumers of the By Kiy Sneakers, and (vii) the quality of the By Kiy Sneakers.

10.9.   Nike's knowledge of any instances of confusion by or among consumers, distributors, wholesalers, retailers, vendors, or merchants, between footwear sold by Nike and By Kiy, and the basis of that knowledge, including information regarding each and every instance that a person buying any By Kiy product: actually believed the By Kiy product was a Nike product; did not understand the product was a By Kiy product; or was confused or unclear about whether Nike had involvement in the creation, marketing, or sale of the product.

**Topics Related to Nike's Allegations, Contentions, and Complaint**

11.10. Information and Documents that support, refute, or relate supporting allegations to allegations in the Complaint and Answer to the Counterclaim. including without limitation:

> a.   That By Kiy's products have led to any "initial interest confusion," "post-sale confusion," and "confusion in the secondary market" with Nike products, including without limitation any and all studies, surveys, analysis, quantification, empirical research, or other research that support, refute, or relate to Nike's claim.
>
> b.   That By Kiy's actions have damaged Nike, including without limitation the location of all financial Documents setting out Nike's loss of profits caused by By Kiy and calculations that support, refute, or relate to Nike's claim of loss of profits and damage.

~~c. Consumer, customer, or public perception of By Kiy's products.~~

~~d. Information that support, refute, or relate to Nike's claim that customers view By Kiy's products as "near-verbatim replicas of" the Trade Dress Registrations and/or associated Nike designs, and the proportion of customers who share this view and/or do not share view.~~

~~e. That By Kiy has tried to associate its products with NIKE;~~

~~f. That By Kiy has "attempted to capitalize on NIKE's valuable reputation and consumer goodwill by using the" Trade Dress Registrations "and/or confusingly similar marks in a manner that is likely to cause consumers  or potential consumers to believe that By Kiy's [Sneakers] are associated with and/or approved by Nike, when they are not";~~

~~g. That By Kiy has "impar[ed] the distinctiveness of" the Trade Dress Registrations "through false association with By Kiy, constituting dilution by blurring";~~

~~h. That By Kiy "has created a likelihood of injury to Nike's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Nike's products and [By Kiy Sneaker(s)] and has otherwise competed unfairly by unlawfully trading on and using the" Trade Dress Registrations "without Nike's permission";~~

~~i. That By Kiy's alleged infringement of the Trade Dress Registrations was or is "willful and deliberate" and/or intentional;~~

~~j. That By Kiy's use of the Trade Dress Registrations:~~

~~i. "constitutes infringement of the Asserted Marks;"~~

~~ii. "is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source,~~

>>>>>>sponsorship, or affiliation of By Kiy Sneakers with Nike or Nike's products;" and
>>>>>iii. "is likely to cause such people to believe in error that By Kiy's [Sneakers] have been authorized, sponsored, approved, endorsed, or licensed by Nike or that [By Kiy is in some way affiliated with Nike."
>>>>>iv. Constitutes "trademark infringement, false designation of origin, unfair competition, and trademark dilution."
>>>>k. That the Trade Dress Registrations are recognized by consumers as being associated with Nike products or being indicative of a Nike product in the absence of a "Swoosh" on the side of the shoe, including all all studies, surveys, analysis, quantification, empirical research, or other research that support, refute, or relate to Nike's claim.
>>>>l. The injuries, harm, or detriment suffered by Nike because of By Kiy in any respect.

12.11. Nike's design and development process for Nike Sneakers, including the Jordan-1, reissues of the Jordan-1, and the "Swooshless Jordan"", characteristics and changes of the designs, the dates of the changes, and the reasons for the changes; and Nike's system for internal communication, and sharing, storing, developing and researching designs of Nike Sneakers.

13.12. The sneaker market before the Jordan-1, including the design of shoes immanent in the market at that time, and after Jordan-1 was first sold in 1985, including shoes that Nike believed "copied" the Jordan-1, whether or not in violation of trademark.

14.13. Nike's Trademark registration practices and the Trademark registration process for each of the Trade Dress Registrations, including Nike's Declarations to the USPTO, including regarding the Trade Dress Registrations., and including claims in such declarations that Nike products have a "rigorous design and manufacturing process" (or materially similar

11

~~language) and evidence in support thereof; a "distinctive trademarks that are readily identifiable" (or materially similar language) and evidence in support thereof; a "distinctive trademarks that are readily identifiable" (or materially similar language) and evidence in support thereof ; "strict quality control standards for its products" (or materially similar language) and evidence in support thereof; "neither the shortest, nor the cheapest way to make shoes" (or materially similar language) and evidence in support thereof; processes that are "critical to meet the consumer's expectations for quality that consumers associate with Nike" (or materially similar language) and evidence in support thereof; that Nike's "distinctive" (or materially similar language) "non-functional" (or materially similar language) and evidence in support thereof, as that term is used in any way, including without limitation, as it is used in trademark law, by the USPTO, or by Nike; and that the Trade Dress Registrations were or were not patentable or pertaining to the patenting of the Trade Dress Registration characteristics.~~

~~15.~~14. Information that Nike has or has not studied, inquired, analyzed, surveyed or examined customer perception of shoes without a "Swoosh" or other brand insignia; including information that supports, refutes, or relates to Nike's claims that, the Trade Dress Registrations themselves identify products as belonging to Nike or that any or all of the Trade Dress Registrations are noticeable, meaningful, or memorable in any way to consumers.

~~16.~~15. Products that Nike contends have violated or violate the Trade Dress Registrations from 1985 to the present, including without limitation products that Nike has and has not commenced litigation regarding; and the designer and/or manufacturer of each such product; and the business impact of such alleged violation, and what steps, if any, Nike took and when, to correct the alleged violation.

~~17.    The facts Nike is aware of that support, refute, or relate to Your Answer to the Counterclaim.~~

~~18.    The facts You are aware of that support, refute, or relate to the fame of the Asserted Marks.~~

19.   The Documents, Communications, or facts Nike intends to use at the trial or for any motion for summary judgment.

**Jordan-1 Sales and Quality**

20.   The numbers of Nike Sneakers manufactured and sold from 1985 to present and retail prices and revenue from sales of the Nike Sneakers from 1985 to present.

21.16. The facts and circumstances surrounding the marketing, advertising, or promotion of the Nike Sneakers, including marketing studies, PowerPoint presentations, reports or market research (or similar documents) relating to the impact of alleged "knockoff" sneakers (i.e., sneakers that Nike believes infringe its trademarks) on Nike's market share.

22.17. Information relating to customer complaints or concerns about Nike shoes bearing, using, or incorporating in any manner any of the '064 Registration, '694 Registration, '691 Registration, or '535 Registration, including without limitation complaints about mold, durability, poor workmanship, manufacturing problems, units available for sale for releases, defects, or issues with quality of materials.

23.18. An identification of the component parts for each Nike Sneaker, including the materials, fabrics, leathers, and colors used in connection with the manufacture of each Nike Sneaker, the supplier(s) for the component parts for each Nike Sneaker.

**Other Alleged Violations of Nike's Trade Dress**

24.19. Nike's litigation and claims against John Geiger or any entity owned or controlled by John Geiger (collectively, "Geiger") and Warren Lotas, Warren Lotas LLC, Kalin Stoyanchev, and/or any entity owned or controlled by any of them (collectively, "Lotas"), including without limitation the terms of the settlement of Nike's litigation against Geiger and Lotas, the terms, conditions, parameters, or other guidelines by or through which Nike agreed to not object further to Geiger's and Lotas's continued manufacture of any shoe design, any licenses granted to Geiger and Lotas, or any approval, permission, or acquiescence – formal or

13

14

informal, tacit or explicit – to Geiger's and Lotas's creation of any footwear or sneaker designed or distributed by Geiger and Lotas.

~~25.~~20. Any approval, permission, or acquiescence provided by Nike – formal or informal, tacit or explicit – of any footwear or sneaker designed by a person or entity Nike has or had accused or alleged in any manner of infringing any of the, '064 Registration, '694 Registration, '691 Registration, or '535 Registration.

**Electronically Stored Information**

~~26.~~21. Nike's Documents and Document retention policies, including without limitation any policies regarding the creation, storage, retention or disposition of documents and Nike's "Electronically Stored Information" or "ESI".

**CERTIFICATE OF SERVICE**

I hereby certify that on July ~~12~~16, 2023, I caused a true and correct copy of By Kiy's FIRST AMENDED NOTICE OF 30(b)(6) DEPOSITION OF PLAINTIFF NIKE, INC. to be served via email on the following counsel for Defendants:

Gershoni, Michael Michael.Gershoni@arnoldporter.com

Gershoni, Bridgette Bridgette.Gershoni@arnoldporter.com

DATED: July ~~12~~16, 2023

By: *John S. Durrant*